IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COHEN BRAFFITS ESTATES DEVELOPMENT, LLC, a New York limited liability company; and BRAFFITS CREEK ESTATES, LLC, a Utah limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> SHAE FINANCIAL GROUP, LLC, a Utah limited liability company; SOUTHWEST UTAH PROPERTIES, LLC, a Utah limited liability company; FRANK "TONY" ALLEN, individually and in his capacity as trustee of the Allen Family Living Trust; SHARON ALLEN, in her capacity as co-trustee of the Allen Family Living Trust; and G. TROY PARKINSON, an individual, <br><br> Defendants, <br><br> VILLAGE DEVELOPMENT GROUP, INC., <br><br> Intervenor. | **MEMORADUM DECISION AND ORDER** <br><br> Case No. 4:23-cv-00031-RJS-PK <br><br> Chief Judge Robert J. Shelby <br><br> Magistrate Judge Paul Kohler |

Now before the court are four pending Motions: Defendants' Motion to Dismiss,[1]

Plaintiffs' Motion for Leave to File Second Amended Complaint,[2] Plaintiffs' oral Motion for

Leave to File a Motion for Leave to File Third Amended Complaint,[3] and Defendant Southwest

Utah Properties, LLC's Motion to Compel Release of Lis Pendens.[4]  For the reasons explained

---

[1] ECF 27, *Motion to Dismiss*.

[2] ECF 69, *Motion for Leave to File Second Amended Complaint*.

[3] *See* ECF 84, *Motion Hearing Transcript* at 13, 30, 37; *see also* ECF 81, *Nov. 16, 2023 Minute Entry*.

[4] ECF 28, *Motion to Compel Release of Lis Pendens*.

1

below, the Motion to Dismiss is granted, the Motion for Leave to File Second Amended Complaint is denied, the oral Motion for Leave to a File Motion for Leave to File Third Amended Complaint is denied, and the Motion to Compel Release of Lis Pendens is granted in part and denied in part.

## BACKGROUND

Because the court is reviewing Defendants' Motion to Dismiss, it will accept as true all well-pleaded facts and view them in the light most favorable to Plaintiffs.[5]  The Amended Complaint includes numerous allegations, but the court will focus on the facts relevant to the pending Motions.

**Cohen Purports to Enter Loans on CBED's Behalf**

In 2015, Zohar Cohen obtained two loans—totaling $1,050,000—from Defendant Shae Financial Group, LLC (Shae Financial).[6]  Cohen purported to enter the loan agreements on behalf of Plaintiff Cohen Braffits Estates Development, LLC (CBED).[7]  Cohen was a member of CBED but was not authorized to take out the loans.[8]

Each loan was reflected in a corresponding promissory note.[9]  Those notes were in turn secured by a $28 million face-value promissory note owned by CBED, which the parties refer to as the Kennedy Note.[10]  The Kennedy Note was secured by a trust deed (the Kennedy Trust

---

[5] *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[6] ECF 22, *Amended Complaint* ¶¶ 26, 107, 165.

[7] *Id.*

[8] *Id.* ¶¶ 17, 46–50.

[9] *See* ECF 9-3, *First TRO Motion: Exhibit 3* (*Shae Loan Documents*) at 17–18, 34–35.  Plaintiffs cite several Exhibits, including the Loan Documents, without objection from Defendants.  The court cites relevant Exhibits without converting the Motion to Dismiss into a Motion for Summary Judgment.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[10] *Amended Complaint* ¶¶ 2, 22.

Deed) on real property in Iron County, Utah referred to as Braffits Mountain.[11]  The promissory notes were also secured by a separate trust deed on Braffits Mountain (the Shae Financial Trust Deed).[12]  Cohen subordinated the Kennedy Note to the Shae Financial Trust Deed, making the Shae Financial Trust Deed the priority interest.[13]

At the time of the loans, Braffits Mountain was owned by Plaintiff Braffits Creek Estates, LLC.[14]  Braffits Creek Estates is wholly owned by CBED.[15]

**CBED Sues Cohen in New York**

In August 2015, CBED sued Cohen in New York state court, alleging he was not authorized to enter into the loan agreements with Shae Financial.[16]  The New York court concluded the loans "were null and void pursuant to New York Limited Liability Company Law § 402(c)(2)(3) and (d)(2)."[17]  It thus entered judgment against Cohen and in CBED's favor for $7.6 million.[18]

**CBED Sues Shae Financial in Utah**

Shae Financial was not a party to the New York action, and it was not bound by the New York court's ruling that the loans were null and void.[19]  CBED had defaulted on the loans in

---

[11] *Id.* ¶¶ 2, 20.

[12] *Id.* ¶¶ 26, 107; *see also* ECF 29, *Opposition to Motion to Dismiss* at 5.

[13] *Amended Complaint* ¶ 107.  At times, Plaintiffs appear to question the subordination by saying it was "purportedly" done by Cohen as part of the loans.  *Id.* ¶¶ 107, 415, 449.  But they have also repeatedly represented that this case is not an attempt to challenge or otherwise invalidate the loans.  *See id.* ¶ 29.  So the court will not assume the subordination did not occur.

[14] *Id.* ¶ 19.

[15] *Id.* ¶ 38.

[16] *Id.* ¶¶ 227, 233.  CBED's New York Complaint did not originally include claims concerning the loans.  *See id.* But for purposes of the pending Motions, it is irrelevant when CBED amended its New York Complaint to include those claims.

[17] *Id.* ¶¶ 239–40; *see also* ECF 9-5, *First TRO Motion: Exhibit 5* (*New York Judgment*) at 3.

[18] *New York Judgment* at 3; *see also Amended Complaint* ¶¶ 244–45.

[19] *Amended Complaint* ¶¶ 242–43.

2015, and in 2018, Shae Financial began proceedings to foreclose on Braffits Mountain.[20]
Attempting to stop the foreclosure, CBED sued Shae Financial in Utah state court.[21]

Shae Financial filed a Counterclaim, requesting the court "determine the validity, amount
and priority of [Shae Financial's] security interest in the Kennedy Note, reduce [Shae
Financial's] secured claim to judgment and order the Kennedy Note sold at execution sale."[22]
Shae Financial also moved for summary judgment, arguing the claims against it were barred
because CBED had elected and obtained a remedy in the New York action.[23]

The state district court granted summary judgment in Shae Financial's favor, concluding
CBED elected its remedy by receiving a judgment and monetary damages in the New York
action.[24]  The state district court also granted summary judgment to Shae Financial on its
Counterclaim and awarded it a $3.2 million judgment against CBED.[25]  The state court further
declared Shae Financial had a valid, first priority interest in the Kennedy Note and Kennedy
Trust Deed.[26]  The court thus ordered, "The Kennedy Note and Kennedy Trust Deed shall be
levied upon and sold by the Sheriff of Iron County, Utah . . . ."[27]

---

[20] *Id.* ¶ 247.

[21] *Id.* ¶ 248.

[22] ECF 9-20, *First TRO Motion: Exhibit 20* (*Shae Financial's Counterclaim*) at 4.

[23] *Amended Complaint* ¶ 253.

[24] *Id.* ¶¶ 254, 256.

[25] *Id.* ¶ 279; ECF 9-7, *First TRO Motion: Exhibit 7* (*Judgment & Order Authorizing Sheriff's Sale of Collateral*) at 4.

[26] *Judgment & Order Authorizing Sheriff's Sale of Collateral* at 4.

[27] *Id.*

Plaintiffs appealed the state district court's summary judgment ruling.[28]  The Utah Court of Appeals heard oral argument in January and June 2023 but has not issued a decision.[29]

**The Kennedy Note is Sold at a Sheriff's Sale**

Plaintiffs asked the state district court and the Utah Court of Appeals for a stay of execution.[30]  Those requests were denied because Plaintiffs did not post adequate bond.[31]  On October 18, 2021, the state district court entered a Writ of Execution, directing the Iron County Sheriff to "levy upon and sell the Kennedy Note and Kennedy Trust Deed to satisfy the Judgment."[32]

On January 5, 2022, the Iron County Sheriff held a sheriff's sale and sold the Kennedy Note to Defendant Southwest Utah Properties, LLC for $10,000.[33]  Southwest then began a nonjudicial foreclosure of the Kennedy Trust Deed, with Defendant G. Troy Parkinson as the trustee.[34]  In April 2022, Southwest purchased Braffits Mountain at a trustee's sale for a credit bid of $10 million.[35]  After this sale, Braffits Creek Estates (the promisor of the Kennedy Note) owes a more than $10 million deficiency to Southwest (the holder of the Kennedy Note).[36]

---

[28] *Amended Complaint* ¶ 257.

[29] *Id.* ¶¶ 272, 275.  After the Utah court granted summary judgment, Plaintiffs sought to modify the New York Judgment.  *Id.* ¶¶ 259–60.  The New York court modified the Judgment so it now declares the loans null and void but does not award damages to CBED.  *Id.* ¶¶ 262–64.  Plaintiffs then filed a Rule 60 Motion in Utah state court, seeking to set aside the Utah court's summary judgment ruling.  *Id.* ¶ 265; *see also* Utah R. Civ. P. 60(b).  The state court denied the Rule 60 Motion, and that denial was part of the June 2023 Utah Court of Appeals argument. *Amended Complaint* ¶¶ 268–71.

[30] *Amended Complaint* ¶ 280.

[31] *Id.* ¶¶ 287–94.

[32] *Id.* ¶ 297.

[33] *Id.* ¶¶ 320–22.

[34] *Id.* ¶ 326.

[35] *Id.* ¶ 327.

[36] *Id.* ¶ 329.  The face value of the promissory note was reduced from $28 million to $20 million in bankruptcy proceedings.  *Id.* ¶ 328.

## PROCEDURAL HISTORY

On April 21, 2023, Plaintiffs initiated this action in federal court.[37]  Among other things, they alleged the sheriff's sale was commercially unreasonable and improperly noticed, and Defendants engaged in price fixing and collusive bidding.[38]  Plaintiffs' counsel also recorded an Amended Notice of Pendency of Action on Braffits Mountain, providing notice of the present action (April 2023 Lis Pendens).[39]

On April 26, Plaintiffs filed an ex parte Motion for Temporary Restraining Order, requesting the court enjoin the "pending sale" of Braffits Mountain (First TRO Motion).[40]  The court denied the First TRO Motion without prejudice because it did not include the required attorney certification.[41]

The court also issued an Order to Show Cause, identifying deficiencies in Plaintiffs' Complaint that affected the court's ability to assess subject matter jurisdiction.[42]  Plaintiffs filed an Amended Complaint, addressing those deficiencies.[43]  The Amended Complaint asserts ten causes of action, including two requests for declaratory relief.[44]  All ten claims are based in state law,[45] and Plaintiffs assert this court has diversity jurisdiction.[46]  Plaintiffs seek various forms of relief, including money damages "representing the value of the Kennedy Note and the value of

---

[37] ECF 1, *Complaint*.

[38] *See id.* ¶¶ 1–14.

[39] ECF 4, *April 2023 Lis Pendens*.

[40] ECF 8, *First TRO Motion* at 1.

[41] ECF 12, *Order Denying Plaintiffs' Motion for Temporary Restraining Order Without Prejudice*; *see also* Fed. R. Civ. P. 65(b)(1)(B).

[42] ECF 21, *Order to Show Cause*.

[43] *Amended Complaint*.

[44] *Id.* ¶¶ 340–496.

[45] *Id.*

[46] *Id.* ¶ 44 (citing 28 U.S.C. § 1332).

Braffits Mountain," an "order of equitable disgorgement requiring Defendants to disgorge and pay to Plaintiffs all ill-gotten gains, profits, and property traceable to the Kennedy Note and Braffits Mountain," and an equitable order nullifying the sheriff's sale.[47]

Defendants moved to dismiss the Amended Complaint for failure to state a claim.[48] Southwest also filed a Motion to Compel Release of Lis Pendens, referencing the arguments in Defendants' Motion to Dismiss and arguing the April 2023 Lis Pendens must be released.[49] Defendants moved to expedite their Motion to Dismiss,[50] and the court held a hearing where it denied the Motion to Expedite and ordered supplemental briefing on *Younger* abstention and the *Colorado River* doctrine.[51]

After the briefing was complete, Plaintiffs again requested a temporary restraining order (Second TRO Motion).[52] The court held a hearing and denied the Second TRO Motion on the merits, concluding Plaintiffs had not shown irreparable harm was likely.[53]

Plaintiffs also moved for leave to file a Second Amended Complaint.[54] The Proposed Amended Complaint seeks to add "a declaratory judgment claim and related allegations about Defendants' attempts to foreclose on the Shae [Financial] Trust Deed on August 25, 2023."[55]

---

[47] *Id.* at 112–14. It is unclear from the Amended Complaint if any of the relief is requested in the alternative.

[48] *Motion to Dismiss.* Defendants also moved to strike portions of the Amended Complaint. *See id.* at 33–35. Because the court grants the Motion to Dismiss, it is unnecessary to resolve the Motion to Strike.

[49] *Motion to Compel Release of Lis Pendens* at 3. Village Development Group, Inc. filed a Motion to Intervene for the limited purpose of joining Southwest's Motion to Compel Release of Lis Pendens. ECF 79, *Motion to Intervene.* Village Development Group states it bought Braffits Mountain from Southwest and has a legitimate interest in the property. *Id.* at 6–7. Plaintiffs consented to the intervention, so the court granted the Motion to Intervene. *See* ECF 82, *Response to Motion to Intervene* at 13; ECF 83, *Docket Text Order Granting Motion to Intervene.*

[50] ECF 47, *Request for Expedited Hearing.*

[51] ECF 52, *Aug. 7, 2023 Minute Order.*

[52] ECF 64, *Second TRO Motion.*

[53] ECF 70, *Aug. 23, 2023 Minute Order.*

[54] *Motion for Leave to File Second Amended Complaint.*

[55] *Id.* at 2; *see also* ECF 69-1, *Proposed Second Amended Complaint* ¶¶ 501–12 (Eleventh Claim for Relief).

The court heard argument on the three pending Motions—Defendants' Motion to Dismiss, Plaintiffs' Motion for Leave to File Second Amended Complaint, and Southwest's Motion to Compel Release of Lis Pendens—on November 16, 2023.[56]  These Motions are fully briefed and ripe for review.

At the hearing, the court explained its preliminary view that dismissal of all Plaintiffs' claims was likely required.[57]  Plaintiffs responded that if the court was inclined to dismiss their claims, it should instead allow leave to amend.[58]  Plaintiffs did not specify how they would amend their pleading, and they have not since filed a formal Motion for Leave to Amend.

## DISCUSSION

The court will first address the parties' supplemental briefing concerning *Younger* abstention and the *Colorado River* doctrine.  It concludes neither doctrine is applicable.

Next, the court will explain why Defendants' Motion to Dismiss is granted and Plaintiffs' Motions for Leave to Amend are denied.  Finally, the court orders the release of the April 2023 Lis Pendens and concludes Defendants are entitled to their related attorney fees and costs, but not damages.

Because the court is sitting in diversity, it applies Utah substantive law but federal procedural law.[59]

---

[56] *Nov. 16, 2023 Minute Entry*.

[57] *Motion Hearing Transcript* at 5–7.

[58] *Id.* at 13, 30.

[59] *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017).

## I.    *Younger* abstention is inapplicable.

Defendants argue this court should abstain under *Younger v. Harris*.[60]  For the reasons

explained below, the court concludes *Younger* abstention is not warranted.

Under *Younger*, a federal court must abstain from deciding a case within its jurisdiction

when doing so would interfere with an ongoing state proceeding.[61]  *Younger* abstention applies

only when there is "(1) an ongoing state judicial proceeding, (2) the presence of an important

state interest, and (3) an adequate opportunity to raise federal claims in the state proceedings."[62]

Further, *Younger* applies only when the ongoing state proceeding falls within one of "three

exceptional categories"[63] identified by the Supreme Court: "state criminal prosecutions," "civil

enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in

furtherance of the state courts' ability to perform their judicial functions."[64]

Defendants argue this case fits into the third category because there is a state proceeding

"involving certain orders that are uniquely in furtherance of the state courts' ability to perform

their judicial functions."[65]  Plaintiffs disagree.[66]  Even assuming Defendants are correct, *Younger*

is inapplicable because the court will not interfere with an ongoing state judicial proceeding by

deciding this case.

---

[60] ECF 44, *Reply in Support of Motion to Dismiss* at 6–7 (citing *Younger v. Harris*, 401 U.S. 37 (1971)); *see also* ECF 57, *Plaintiffs' Younger Brief*; ECF 58; *Defendants' Younger Response*; ECF 61, *Plaintiffs' Younger Reply*.

[61] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013).

[62] *Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1256 (10th Cir. 2022) (ellipsis and internal quotation marks omitted) (quoting *Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989)).

[63] *Sprint Commc'ns*, 571 U.S. at 79.

[64] *Id.* at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989)); *see also Courthouse News Serv.*, 53 F.4th at 1256.

[65] *Defendants' Younger Response* at 4–8 (quoting *New Orleans Pub. Serv.*, 491 U.S. at 368).

[66] *Plaintiffs' Younger Brief* at 7–12.

As explained, *Younger* applies only if there is "an ongoing state judicial proceeding."[67] So if there is not "any *pending* proceeding in state tribunals," it is "clearly erroneous" to apply *Younger*.[68] This is because "the relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.'"[69]

Here, there are no ongoing state judicial proceedings because the sheriff's sale already happened.[70] And there is no evidence before the court that there are ongoing proceedings in state court concerning that sale. Accordingly, the state district court's Judgment and Writ of Execution have already been enforced, and there are no *pending* state judicial proceedings this court will interfere with.

Because there are no pending state proceedings, this case differs from the Supreme Court cases Defendants rely on, *Juidice v. Vail*[71] and *Pennzoil Co. v. Texaco, Inc.*[72] In *Juidice*, several coplaintiffs sued in federal court, seeking to enjoin the contempt procedures used by a state court.[73] The Supreme Court first concluded only the parties with pending contempt proceedings had standing to sue.[74] It then held *Younger* abstention applied because the state had an important interest "in the contempt process, through which it vindicates the regular operation of its judicial system."[75] In *Pennzoil*, Texaco received an adverse judgment in state court and then sued in

---

[67] *Courthouse News Serv.*, 53 F.4th at 1256 (ellipsis omitted) (quoting *Seneca-Cayuga Tribe*, 874 F.2d at 711).

[68] *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (emphasis in original).

[69] *Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (quoting *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509 (1972)).

[70] *See Amended Complaint* ¶ 320.

[71] 430 U.S. 327 (1977).

[72] 481 U.S. 1 (1987).

[73] 430 U.S. at 330.

[74] *Id.* at 331–33; *see also id.* at 333 n.9.

[75] *Id.* at 335.

federal court, alleging the state "proceedings violated rights secured to Texaco by the Constitution and various federal statutes."[76]  Texaco thus asked the federal court to enjoin the state plaintiff "from taking any action to enforce the judgment."[77]  The Supreme Court held *Younger* abstention applied because a federal injunction would "interfere with the execution of state judgments."[78]

Both *Juidice* and *Pennzoil* involved ongoing state judicial proceedings, but this case does not.  Unlike *Juidice*, there is no evidence of ongoing proceedings, and unlike *Pennzoil*, the state court's Judgment has already been enforced.  Thus, this case is not like *Juidice* or *Pennzoil*.

Nevertheless, Defendants contend "the state court proceeding is indisputably on appeal and, therefore, ongoing."[79]  But Defendants have not explained how the federal proceedings will interfere with the state court appeal.  In state court, Plaintiffs appealed the state district court's Judgment, arguing the election-of-remedies ruling was incorrect.[80]  They did not appeal the Writ of Execution, which must be appealed separately because it "stands as a separate and distinct order from the underlying judgment."[81]  So the Utah Court of Appeals is reviewing the Judgment only and not any post-judgment conduct.

Conversely, in federal court, Plaintiffs allege they are not attempting "to challenge, attack, reverse, or in any way change or diminish" the state district court's Judgment.[82]  Rather,

---

[76] 481 U.S. at 5–6.

[77] *Id.* at 6.

[78] *Id.* at 14.

[79] *Defendants' Younger Response* at 11.

[80] *Amended Complaint* ¶¶ 257–58, 265–71; *see also* ECF 11-13, *First TRO Motion: Exhibit 53* (*Appellate Briefs*); ECF 11-14, *First TRO Motion: Exhibit 54* (*Appellate Briefs re: Rule 60 Motion*).

[81] *Cheves v. Williams*, 1999 UT 86, ¶ 50, 993 P.2d 191.

[82] *Amended Complaint* ¶ 29; *see also Plaintiffs' Younger Brief* at 9 ("Plaintiffs are not seeking to control or enjoin Iron County, its sheriffs, or any court-authorized sale.  The sheriff sale is over.  This case challenges Defendants' misconduct.").

their federal action challenges only post-judgment conduct—namely, the sheriff's sale.[83]   If

Plaintiffs are unsuccessful in federal court, the status quo will remain the same, and there will be

no effect on the state proceedings.   If Plaintiffs succeed in federal court, the sheriff's sale would

potentially be set aside, but there would be no effect on the underlying Judgment.   And as

explained in more detail below, it appears the state proceedings (regardless of the outcome on

appeal) will not decide ownership of Braffits Mountain.[84]   This lessens the possibility of

conflicting proceedings on who owns Braffits Mountain.

In short, the court is not persuaded this case would interfere with an ongoing state judicial

proceeding.   It thus does not abstain under *Younger*.[85]

## II.   The *Colorado River* doctrine is inapplicable.

The court requested the parties brief the applicability of the *Colorado River* doctrine.[86]

For the reasons explained below, the court concludes *Colorado River* is inapplicable and does

not warrant abstention or a stay in this case.

The *Colorado River* doctrine "permits a federal court to dismiss or stay a federal action in

deference to pending parallel state court proceedings."[87]   The doctrine's purpose is promoting

"wise judicial administration," "conservation of judicial resources," and "comprehensive

---

[83] *See Amended Complaint* ¶¶ 340–496.

[84] *See infra* Section II.

[85] Even if *Younger* applied, abstention would likely be inappropriate to the extent Plaintiffs seek damages.   *See Amended Complaint* at 112–14; *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996) (explaining the Supreme Court has "permitted federal courts applying abstention principles in damages actions to enter a stay, but [has] not permitted them to dismiss the action altogether"); *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004) ("The rationale for *Younger* abstention can be satisfied, however, by just staying proceedings on the federal damages claim until the state proceeding is final.").

[86] *Aug. 7, 2023 Minute Order*; *see also* ECF 55, *Defendants' Colorado River Brief*; ECF 59, *Plaintiffs' Colorado River Response*; ECF 60, *Defendants' Colorado River Reply*.

[87] *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

disposition of litigation."[88]  Because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, they tread lightly when applying *Colorado River*.[89]

*Colorado River* applies only if two requirements are met.  First, the federal and state proceedings must be parallel.[90]  Second, exceptional circumstances must exist.[91]  If both requirements are satisfied, abstention may be appropriate, although the Tenth Circuit has stated "the better practice is to stay the federal action pending the outcome of the state proceedings."[92] This is the better practice because "a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action."[93]

Here, the court concludes *Colorado River* is inapplicable because the state and federal proceedings are not parallel.  It thus limits its analysis to the first step and does not consider whether exceptional circumstances exist.

For *Colorado River* purposes, proceedings are parallel "if substantially the same parties litigate substantially the same issues in different forums."[94]  The federal court should consider whether the "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."[95]  In other words, it should evaluate whether it "will

---

[88] *Colo. River*, 424 U.S. at 817 (parentheses omitted) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

[89] *Id.* at 817–18.

[90] *Fox*, 16 F.3d at 1081.

[91] *Id.*  The Supreme Court has identified factors to consider when determining whether exceptional circumstances exist.  *See Colo. River*, 424 U.S. at 818.  Those factors are "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction."  *Fox*, 16 F.3d at 1082.  Other relevant factors include "the vexatious or reactive nature of either the federal or the state action, whether federal law provides the rule of decision, and the adequacy of the state court action to protect the federal plaintiff's rights."  *Id.* (citations omitted).

[92] *Fox*, 16 F.3d at 1083.

[93] *Id.*

[94] *Id.* at 1081 (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)).

[95] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses."[96]  "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."[97]  The proper focus of this inquiry is how the proceedings "actually exist" and not how they could have been brought.[98]

In the case at hand, the proceedings are related, but the court doubts the state-court litigation will completely resolve the issues between the parties.  In state court, Plaintiffs and Shae Financial are litigating whether CBED's New York suit bars it from seeking a declaration in Utah that the loans are invalid and unenforceable.[99]  In federal court, Plaintiffs are not asking the court to decide the validity or enforceability of the loans.[100]  Rather, the Amended Complaint seeks relief for the allegedly unlawful sheriff's sale.[101]  Plaintiffs confirm their federal claims "have nothing to do with the validity of the loan agreement and associated security" but rather concern "the bad acts of Defendants during their collection efforts."[102]  And their Amended Complaint "does not seek to challenge, attack, reverse, or in any way change or diminish the Iron County district court's ruling."[103]

---

[96] *Id.*

[97] *Id.*; *see also Colo. River*, 424 U.S. at 819 ("Only the clearest of justifications will warrant dismissal.").

[98] *Fox*, 16 F.3d at 1081 (emphasis omitted).

[99] *Appellate Briefs* at 8 (Statement of Issues from Appellants' Brief), 95 (Statement of Issues from Appellee's Brief); *see also* ECF 9-18, *First TRO Motion: Exhibit 18* (*State Court Amended Complaint*).  In the state and federal litigation, CBED and Braffits Creek Estates are the only Plaintiffs.  *Compare State Court Amended Complaint* at 2, *with Amended Complaint* ¶¶ 37–38.  As for Defendants, Shae Financial is the only Defendant in the state litigation, while the federal Defendants include Shae Financial, Southwest, Frank Allen, Sharon Allen, and G. Troy Parkinson. *Compare State Court Amended Complaint* at 2, *with Amended Complaint* ¶¶ 39–43.

[100] *See Amended Complaint* ¶¶ 340–496; *Plaintiffs' Colorado River Response* at 4.

[101] *Amended Complaint* ¶¶ 340–496.

[102] *Plaintiffs' Colorado River Response* at 9.

[103] *Amended Complaint* ¶ 29.

14

However, Defendants argue the proceedings are parallel because "at the heart of both cases is Plaintiffs' allegation that Shae [Financial] did not properly enter into the Shae loan with CBED."[104]  The Amended Complaint does include numerous detailed allegations about Cohen and the loans.[105]  But as Defendants argued in their Motion to Strike, most of those allegations are seemingly irrelevant to Plaintiffs' federal case, which concerns the sheriff's sale.[106]  So although Plaintiffs included various factual allegations pertinent to their state-court claims, that does not make the proceedings parallel.

Defendants also argue the proceedings are parallel because Plaintiffs were required to bring their claims in state court.[107]  As explained below, the court agrees this action is an impermissible collateral attack.[108]  But that does not mean the proceedings are parallel.  The inquiry is whether the proceedings as they "actually exist" are parallel.[109]  So regardless of how the claims could have been brought, the court looks at the proceedings as they exist.[110]  And as the proceedings exist, they are not parallel because Plaintiffs' state-court case does not challenge the sheriff's sale.

---

[104] *Defendants' Colorado River Brief* at 9.

[105] *See, e.g.*, *Amended Complaint* ¶¶ 54–226.

[106] *See Motion to Dismiss* at 33–35.  Defendants argue Plaintiffs' claims in federal court include the theory that Shae Financial's "exploitation of [the sheriff's] sale is part of fraud on Plaintiffs because Shae knew that Cohen lacked authority."  *Defendants' Colorado River Brief* at 11.  Plaintiffs contend this argument is "wrong" because their claims in federal court "have nothing to do with the validity of the loan agreement and associated security but the bad acts of Defendants during their collection efforts."  *Plaintiffs' Colorado River Response* at 8–9.  The court takes Plaintiffs' word for it and assumes their claims in federal court are unrelated to Cohen's lack of authority.

[107] *Defendants' Colorado River Brief* at 10.

[108] *See infra* Section III.

[109] *Fox*, 16 F.3d at 1081 (emphasis omitted).

[110] *Id.*

Admittedly, the court is not certain how this case would be affected if Plaintiffs succeed in the Utah Court of Appeals.[111] Plaintiffs appear to argue they can recover Braffits Mountain if they succeed in state court. For example, in their Opposition to Defendants' Motion to Dismiss in federal court, Plaintiffs state, "If the Utah Court of Appeals reverses the Utah district court's decision, Shae cannot keep the Kennedy Note or Braffits Mountain—both of which it purchased as part of its collection efforts."[112] This is consistent with their Complaint in state court, which seeks an order quieting title in Braffits Mountain "in favor of Cohen Braffits."[113] If Plaintiffs recovered Braffits Mountain in state court, that outcome could affect the federal proceeding.

However, in other filings, Plaintiffs suggest they will not recover Braffits Mountain if they succeed in state court. In their *Colorado River* briefing, for example, Plaintiffs argue the "state case does not involve property interests in Braffits Mountain which Allen/Shae/Southwest allegedly acquired post-judgment" and "[t]here is no potential for conflicting proceedings on whether Defendants still have any security interests on Plaintiffs' property."[114] They further contend the state case "will only resolve whether the Shae loans and underlying security interests are null and void."[115]

Given these inconsistent statements, the court is uncertain how a success for Plaintiffs in state court would impact this case. But for at least two reasons, the court doubts there would be an impact. First, in *Cheves v. Williams*, the Utah Supreme Court held that a trial court's

---

[111] If the Utah Court of Appeals affirms the state district court's ruling, the status quo would not change and there would be no impact on this case.

[112] *Opposition to Motion to Dismiss* at 11. At the Utah Court of Appeals, Plaintiffs are challenging the state district court's ruling that Plaintiffs elected their remedy by seeking relief against Cohen in New York. *See Appellate Briefs* at 8. So even if Plaintiffs succeed on appeal, it appears they would need to return to state district court to argue the merits of their claims. *See id.* at 41 (Plaintiffs' requesting a "remand for further proceedings").

[113] *State Court Amended Complaint* ¶ 98.

[114] *Plaintiffs' Colorado River Response* at 6.

[115] *Id.* at 5.

execution order is "a separate and distinct order from the underlying judgment" and a party must "file a separate notice of appeal to challenge it."[116]  Because Plaintiffs did not appeal the state district court's Writ of Execution, it is unclear whether their appeal (even if successful) could result in the sale being undone.[117]  Second, in *2DP Blanding, LLC v. Palmer*, the Utah Supreme Court held that "when an appellant neither obtains a stay of execution nor timely records a lis pendens, he has no recourse against third parties who lawfully acquire the property."[118]  While Plaintiffs' state-court appeal was pending, Southwest (a non-party to the state case) purchased Braffits Mountain.[119]  Plaintiffs did not obtain a stay.[120]  Nor have Plaintiffs alleged there was a lis pendens at that time.[121]  Accordingly, it is possible Plaintiffs would be unable to assert a property interest in state court because there was no stay or lis pendens.[122]  To be clear, this court is not deciding whether *Cheves* or *2DP Blanding* would apply.  But the possibility either or both may apply—and thus prevent Plaintiffs from recovering Braffits Mountain in state court—makes this court doubt the state and federal proceedings are resolving the same issues.[123]

Finally, applying *Colorado River* in this case would not promote wise judicial administration.[124]  As explained below, the court dismisses Plaintiffs' claims because they are an

---

[116] 1999 UT 86, ¶ 50, 993 P.2d 191.

[117] *See* Utah R. App. P. 4 (explaining when a notice of appeal must be filed).

[118] 2017 UT 62, ¶ 27, 423 P.3d 1247 (emphasis omitted).

[119] *Amended Complaint* ¶ 327.

[120] *Id.* ¶¶ 288–94.

[121] *See Amended Complaint*.

[122] *See 2DP Blanding*, 2017 UT 62, ¶ 27.  Plaintiffs may argue Southwest did not "lawfully acquire the property," *see id.*, but in federal court, they argue the state case "will not resolve whether Defendants' collection efforts were unlawful," *Plaintiffs' Colorado River Response* at 5.

[123] *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (explaining district courts should apply *Colorado River* only when they have "full confidence that the parallel state proceeding will 'be an adequate vehicle for the complete and prompt resolution of the issues between the parties'" (quoting *Moses H. Cone*, 460 U.S. at 28)).

[124] *See Colo. River*, 424 U.S. at 817.

impermissible collateral attack.[125]  If the court were to stay under *Colorado River*, it would only

be delaying the inevitable dismissal.[126]  That is not an efficient use of judicial resources, and for

this additional reason, the court declines to stay the proceedings under *Colorado River*.[127]

## III.   All Plaintiffs' claims are dismissed.

Defendants moved to dismiss under Rule 12(b)(6), contending Plaintiffs' Amended

Complaint fails to state a claim upon which relief can be granted.[128]  A complaint survives a

Rule 12(b)(6) challenge only if it alleges facts that if true "state a claim to relief that is plausible

on its face."[129]  A complaint is facially plausible if it pleads "factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."[130]

When evaluating a motion to dismiss, the court accepts all well-pleaded facts as true and views

them in the light most favorable to the nonmoving party.[131]

Defendants advance several arguments, including that Plaintiffs have not alleged the

sheriff's sale is void, so they must challenge the sale directly.[132]  The court agrees and will first

explain why Plaintiffs have not plausibly alleged the sheriff's sale is void.  It then outlines why

this failure requires the court to dismiss all Plaintiffs' substantive claims.  The court next

---

[125] *See infra* Section III.

[126] The Tenth Circuit has stated the "better practice" is to stay, not abstain.  *Fox*, 16 F.3d at 1083.

[127] *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669 (10th Cir. 2020) (acknowledging the "broad discretion accorded a district court in deciding whether to abstain under *Colorado River*").

[128] ECF 27, *Motion to Dismiss*.  In their Reply, Defendants requested the court treat their Motion to Dismiss as a Motion for Summary Judgment.  ECF 44, *Reply in Support of Motion to Dismiss* at 5.  They have withdrawn that request, and the court does not construe the Motion as one for summary judgment.  ECF 66, *Withdrawal of Argument*.  Defendants also moved to strike portions of the Amended Complaint.  *Motion to Dismiss* at 33–35. Because the court dismisses all Plaintiffs' claims, it denies this alternative request as moot.

[129] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[130] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[131] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023).

[132] *Motion to Dismiss* at 13–15.

explains why Plaintiffs' oral Motion for Leave to File a Motion for Leave to File Proposed Third Amended Complaint is denied.  Finally, the court explains why Plaintiffs' requests for declaratory relief are also dismissed.

### A.  Plaintiffs have not plausibly alleged the sheriff's sale is void.

Defendants argue Plaintiffs have not alleged the sheriff's sale is void, so under Utah law, they must challenge the sale directly.[133]  For the reasons set out below, the court agrees that Plaintiffs have not alleged the sheriff's sale is void.

Under Utah law, a voidable sheriff's sale must be challenged directly, not collaterally.[134] For example, in *Bangerter v. Petty*, a judgment debtor's house was sold at a sheriff's sale after a state district court issued a writ of execution.[135]  The purchaser transferred the house to a third-party, and the judgment debtor sued the third-party, seeking to quite title to the house.[136]  The district court granted summary judgment in the judgment debtor's favor because the sheriff's deed contained an incorrect description of the property.[137]   The Utah Court of Appeals reversed.[138]  It favorably cited out-of-state cases holding that a sheriff's sale is void only when

---

[133] *Id.*; *see also Reply in Support of Motion to Dismiss* at 6.

[134] *Bangerter v. Petty*, 2010 UT App 49, ¶¶ 8, 14, 228 P.3d 1250; *see also Acott v. Union Carbide Nuclear Co.*, 349 P.2d 620, 621 (Utah 1960) (declining to hear counterclaim that was "an attempted collateral attack on the title").

[135] 2010 UT App 49, ¶ 2.  Although *Bangerter* was not decided by the Utah Supreme Court, this court cannot ignore *Bangerter*'s holding.  "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."  *Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002)).  "The decision of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).  Given the Utah Supreme Court's holding in *Acott*, this court is persuaded *Bangerter* accurately represents how the Utah Supreme Court would rule.  Plaintiffs have not argued otherwise.  *See Opposition to Motion to Dismiss*.

[136] *Bangerter*, 2010 UT App 49, ¶¶ 3–4.

[137] *Id.* ¶¶ 3, 7.

[138] *Id.* ¶ 14.

the sheriff acts without authority or relies on a void judgment.[139]  It then concluded that because the incorrect description was "a rather minor irregularity" and the judgment debtor had "not challenged the sheriff's authority to conduct the sale," the sale was merely voidable and must be challenged directly.[140]

Although Plaintiffs here challenge the sheriff's sale, they do not allege it relied on a void judgment or was done without authority.[141]  Nor do they allege the sale is void for some other reason.[142]  Additionally, Defendants argued in their Motion to Dismiss that dismissal is required under *Bangerter*,[143] but Plaintiffs did not respond to this argument in their Opposition.[144] Plaintiffs thus likely waived any non-obvious argument that *Bangerter* does not require dismissal.[145]  Nevertheless, for the reasons explained below, even reviewing the Amended Complaint on its face, the court is not persuaded Plaintiffs alleged facts from which the court could reasonably infer the sale was void.

In the Amended Complaint, Plaintiffs challenge the sheriff's sale on three grounds, but none of the allegations support a reasonable inference that the sheriff's sale was void.  First, Plaintiffs allege the sale was not properly noticed, as required by the Uniform Commercial Code, Rule 69B of the Utah Rules of Civil Procedure, and the Security Agreement.[146]  Plaintiffs

---

[139] *Id.* ¶¶ 11–12 (citing *Indep. One Mortg. Corp. v. Gillespie*, 672 A.2d 1279 (N.J. Super. Ct. App. Div. 1996) and *Lang v. Barrios*, 472 N.W.2d 464 (N.D. 1991)).

[140] *Id.* ¶ 14.

[141] *See Amended Complaint*; *see also Opposition to Motion to Dismiss*.

[142] *See Amended Complaint*; *see also Opposition to Motion to Dismiss*.

[143] *Motion to Dismiss* at 13–15.

[144] *See Opposition to Motion to Dismiss*.  Plaintiffs cite *Bangerter* twice in their Opposition, but in neither instance do they address *Bangerter*'s holding that only a void sale can be challenged through collateral attack.  *See id.* at 18.

[145] *See Eaton v. Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019) (treating "any non-obvious responses" a litigant could have but did not make "as waived" and assuming the other side's "analysis is correct").

[146] *Amended Complaint* ¶¶ 12, 304–14, 341–95.

specifically allege the sale was improperly noticed because they received 21-days' notice, when they should have received 30-days' notice; the Iron County Sheriff has not provided proof the notice was posted at the courthouse and three other public places; and the notice was published in the newspaper 4 days before it was served on Plaintiffs.[147]  These deficiencies are akin to the incorrect property description in *Bangerter*, and they are insufficient to render the sale void.[148]

Second, Plaintiffs allege the sheriff's sale was deficient because the Kennedy Note sold for $10,000.[149]  They contend the $10,000 purchase price is grossly inadequate and shocks the conscience because the Kennedy Note had a face value of $28 million.[150]  However, the Kennedy Note was subordinate to the Shae Financial Trust Deed,[151] under which CBED owed Shae Financial $3.2 million as of August 2020.[152]  Also, Plaintiffs allege Braffits Mountain was valued at $29 million in 2007 and $12.85 million in 2014, but they do not allege its value in 2022, when the sale occurred.[153]  Even viewing these facts in the light most favorable to Plaintiffs, they have not plausibly alleged the $10,000 purchase price was so conscious shocking

---

[147] *Id.* ¶¶ 301–14, 369–79.

[148] *Bangerter*, 2010 UT App 49, ¶ 14; *see also id.* ¶ 13 (citing favorably *Chicago v. Cent. Nat'l Bank*, 479 N.E.2d 1040, 1044–45 (Ill. App. Ct. 1985), which held notice deficiencies did not render a sale void).

[149] *Amended Complaint* ¶¶ 400, 415.

[150] *Id.*

[151] *Id.* ¶ 107.

[152] *Id.* ¶ 3.

[153] *Id.* ¶ 32.

as to render the sale void—especially because *Bangerter* does not suggest the purchase price

could render the sale void.[154]

Third, Plaintiffs allege Defendants participated in collusive bidding and price fixing

because when Southwest bid $10,000 on the Kennedy Note, Shae Financial did not credit bid, as

it allegedly would have done if "any outsider" had bid $10,000.[155]  Even assuming that is true,

Plaintiffs do not cite any authority establishing that Shae Financial was obligated to credit bid at

the sheriff's sale.[156]  Nor do they allege Shae Financial's failure to credit bit rendered the sale

void.[157]  Accordingly, Shae Financial's failure to credit bid does not render the sale void.

For these reasons, Plaintiffs have not plausibly alleged the sheriff's sale is void.

Furthermore, Plaintiffs affirmatively argued the sale is voidable, undermining any potential

argument the sale is void.[158]  In their Opposition, Plaintiffs quote the following passage from

*Bangerter*,

> if the inadequacy of price is so gross as to shock the conscience, or if, in addition
> to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken
> any unfairness, or has taken any undue advantage, or if the owner of the property
> or party interested has been for any other reason misled or surprised, then the sale

---

[154] *Bangerter*, 2010 UT App 49, ¶¶ 10–14.  In some of their filings and at oral argument, Plaintiffs argued this court should set aside the sheriff's sale under the standard outlined in *Pyper v. Bond*, 2011 UT 45, 258 P.3d 575.  *See* ECF 41, *Opposition to Motion to Compel Release of Lis Pendens* at 6–8; *Motion Hearing Transcript* at 73.  In *Pyper*, the Utah Supreme Court held "a district court may extend a redemption period or set aside a sheriff's sale where (1) a debtor's property is sold at a grossly inadequate price and (2) there are slight circumstances of unfairness during the redemption period caused by conduct of the party benefitted by the sale." *Pyper*, 2011 UT 45, ¶ 23.  But *Pyper* did not suggest that a grossly inadequate purchase price plus circumstances of unfairness would render a sale void and thus subject to collateral attack.  *See id.*  Additionally, *Bangerter* clearly indicated a showing under *Pyper* would render the sale voidable, not void.  *Bangerter*, 2010 UT App 49, ¶ 16 ("[I]f the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property or party interested has been for any other reason misled or surprised, then the sale will be regarded as fraudulent and void[able] . . . ." (alterations in original) (footnote omitted) (quoting *Young v. Schroeder*, 37 P. 252, 254 (Utah 1894))).  So before this court can evaluate the sale under *Pyper*, it must address the initial question of whether Plaintiffs' federal suit is an improper collateral attack.

[155] *Amended Complaint* ¶¶ 11, 323, 390.

[156] *See Amended Complaint* ¶¶ 340–467; *see also Opposition to Motion to Dismiss*.

[157] *See Amended Complaint*; *see also Opposition to Motion to Dismiss*.

[158] *Opposition to Motion to Dismiss* at 18–20.

will be regarded as fraudulent and void[able],[159] or the party injured will be permitted to redeem the property sold.[160]

Plaintiffs then argue they have "plausibly [pled] such a claim."[161]  Consequently, the court understands Plaintiffs to be arguing the alleged deficiencies rendered the sale voidable.[162] Assuming Plaintiffs are correct, *Bangerter* requires the sale be challenged directly.[163]

For these reasons, the Amended Complaint does not plausibly allege the sheriff's sale is void.  Finally, although Plaintiffs did not directly respond to *Bangerter*, they did argue their federal case is not an impermissible collateral attack.  For the reasons set forth below, their arguments are not persuasive.

In Opposition to Defendants' Motion to Dismiss, Plaintiffs contend Defendants' collateral-attack argument is really a *Rooker-Feldman* argument.[164]  The *Rooker-Feldman* doctrine precludes lower federal courts "from exercising appellate jurisdiction over final-state court judgments."[165]  But Defendants did not invoke *Rooker-Feldman*—they invoked Utah law requiring plaintiffs to challenge a sheriff's sale directly.[166]  So Defendants' argument cannot fairly be construed as a *Rooker-Feldman* argument, particularly because Defendants agree that doctrine is inapplicable.[167]

---

[159] The Utah Court of Appeals altered "void" to "void[able]," noting it believed the case it was quoting "should be understood as meaning 'voidable.'"  *Bangerter*, 2010 UT App 49, ¶ 16 n.5.

[160] *Opposition to Motion to Dismiss* at 18 (quoting *Bangerter*, 2010 UT App 49, ¶ 16).

[161] *Id.*

[162] *See id.* ("Defendants argue under *Bangerter v. Petty* that a sale is *voidable* if it is 'manifestly unfair' which includes 'gross irregularities, mistake, fraud, or collusion.' . . . Contrary to Defendants' arguments, Plaintiffs plausibly claim relief under this standard." (second emphasis added) (footnote omitted)).

[163] *Bangerter*, 2010 UT 49, ¶¶ 8, 14.

[164] *Opposition to Motion to Dismiss* at 9 (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923)); *see also id.* at 12–14 (arguing this case is not a collateral attack because Plaintiffs are not challenging a state-court judgment).

[165] *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam).

[166] *Motion to Dismiss* at 13–15.

[167] *Reply in Support of Motion to Dismiss* at 6.

Plaintiffs also raised three additional arguments in their Response to Defendants'
*Colorado River* Brief.[168]  These arguments are procedurally improper because they were not
raised in Opposition to the Motion to Dismiss, but regardless, they are not persuasive.

Plaintiffs first argue "the sale was void because the writ authorizing the sheriff to sell the
property had expired."[169]  Specifically, they argue the Writ of Execution directed the sheriff
"within two months make due return for this writ with your doings," but the sheriff's sale
occurred more than two months after the Writ was issued.[170]  In their Amended Complaint,
Plaintiffs did not allege the Writ of Execution was expired, so this argument cannot prevent a
Rule 12(b)(6) dismissal.[171]  Plaintiffs have also not cited any authority establishing the Writ of
Execution was expired and thus void under the facts of this case.

Second, Plaintiffs argue this action is not a collateral attack on the sheriff's sale because
they are also challenging the later nonjudicial foreclosure of the Kennedy Trust Deed.[172]  But the
Amended Complaint alleges the nonjudicial foreclosure was improper because it would not have
happened but for "the defective and unlawful" sheriff's sale.[173]  Thus, the challenge to the
nonjudicial foreclosure is just an extension of Plaintiffs' collateral attack on the sheriff's sale.

Plaintiffs' third argument raised in the *Colorado River* briefing is that "Utah law
specifically recognizes that a separate action can be brought to challenge a judgment procured by

---

[168] *Plaintiffs' Colorado River Response* at 8.

[169] *Id.*

[170] *Plaintiffs' Younger Brief* at 4 n.9.

[171] *See Twombly*, 550 U.S. at 570 (holding there must be sufficient facts "to state a claim to relief that is plausible *on its face*" (emphasis added)).  In their Opposition, Plaintiffs state they "claim that the writ of execution pursuant to which the Sheriff's sale occurred was expired."  *Opposition to Motion to Dismiss* at 19.  But they do not argue this rendered the sale void, nor do they cite relevant allegations in their Amended Complaint.  *See id.*

[172] *Plaintiffs' Colorado River Response* at 8.

[173] *Amended Complaint* ¶ 34; *see also id.* ¶¶ 409–11, 452.

fraud so, under Utah law, Plaintiffs are entitled to bring this action in a separate proceeding."[174] However, Plaintiffs have repeatedly stated they are not using this action to challenge the state district court's Judgment.[175]  If Plaintiffs had alleged the state court Judgment is void due to fraud, then the court's abstention analysis certainly would have looked different.

Lastly, at oral argument, Plaintiffs argued their case was not an impermissible collateral attack under *Silva v. Silva*.[176]  That case was vacated by the Utah Court of Appeals, so it carries no precedential value.[177]  Regardless, the case is readily distinguishable.  In *Silva*, the Utah Court of Appeals held a sheriff's sale was void because the underlying judgment was also void.[178]  As explained, Plaintiffs here have not alleged the underlying judgment was void, nor have they alleged the sale was void for some other reason.  For those reasons, *Silva* is inapplicable.

Plaintiffs also appeared to argue that language in *Silva* demonstrates they could not have brought a direct attack.[179]  In *Silva*, after explaining the sheriff's sale was void, the Utah Court of Appeals stated it would not "address any remaining issues relating to the purchaser."[180]  The court remanded and declined to address those issues because the parties had "not briefed the further implications of a void judgment" and the purchaser was not a party to the appeal.[181]  As

---

[174] *Plaintiffs' Colorado River Response* at 8.

[175] *See, e.g.*, *Amended Complaint* ¶ 29; *Plaintiffs' Younger Brief* at 10 ("This Court has no power over [the state court] judgment and nor do Plaintiffs ask for the judgment to be affected.").

[176] *Motion Hearing Transcript* at 10–11 (citing *Silva v. Silva*, 2017 UT App 125, 402 P.3d 36, *vacated*, 2018 UT App 210, 437 P.3d 593).

[177] *Silva v. Silva*, 2018 UT App 210, ¶ 12 (explaining the court vacated its prior opinion and reheard the case).

[178] *Silva*, 2017 UT App 125, ¶ 30, *vacated*, 2018 UT App 210.  On rehearing, the Utah Court of Appeals did not conclude the underlying judgment and accompanying sheriff's sale were void.  *Silva*, 2018 UT App 210, ¶¶ 19, 24, 28.  Rather, it remanded for the district court to address certain arguments.  *Id.*

[179] *Plaintiffs' Younger Reply* at 4 (arguing Plaintiffs had to bring a "new case" under *Silva*); *Motion Hearing Transcript* at 67.

[180] *Silva*, 2017 UT App 125, ¶ 31, *vacated*, 2018 UT App 210.

[181] *Id.*

best this court understands that language (which, again, is from a vacated opinion), the Utah Court of Appeals was merely explaining why it would not address unbriefed issues relating to a nonparty.[182]  It was not requiring parties to challenge sheriff's sales through collateral proceedings.

For these reasons, Plaintiffs have failed to allege facts from which a factfinder could conclude the sheriff's sale is void.

### B.  Plaintiffs' substantive claims are dismissed under *Bangerter*.

Because Plaintiffs have not alleged the sheriff's sale is void, the court must dismiss any claims that attack the sheriff's sale.  The court concludes all Plaintiffs' substantive claims are an impermissible collateral attack.

Plaintiffs' first through eighth causes of action all rely on Plaintiffs' allegations that the sheriff's sale was unlawful because of the inadequate price, defective notice, price fixing, and collusive bidding.[183]  And for each claim, the requested relief is either an order setting aside the sheriff's sale or money damages compensating Plaintiffs for the allegedly defective sale.[184] Accordingly, each claim is an attack on the sheriff's sale.

Nevertheless, at oral argument, Plaintiffs argued for the first time that even if *Bangerter* applied, their first, third, sixth, seventh, and eighth causes of action should escape dismissal because they seek money damages and not an order setting aside the sale.[185]  For each of those claims, the alleged harm is that Defendants' actions resulted in the Kennedy Note selling for an

---

[182] *See id.*

[183] *Amended Complaint* ¶¶ 340–467.

[184] *Id.* ¶¶ 395, 411–13, 417–19, 430, 444, 455, 463, 467.

[185] *Motion Hearing Transcript* at 41–44.  These claims are for surplus damages under the Utah Uniform Commercial Code, *Amended Complaint* ¶¶ 340–95, Abuse of Process, *id.* ¶¶ 414–19, Breach of Fiduciary Duty, *id.* ¶¶ 445–55, Aiding and Abetting Parkinson's Breach of Fiduciary Duty, *id.* ¶¶ 456–63, and Civil Conspiracy, *id.* ¶¶ 464–67.

inadequate price at the sheriff's sale, entitling Plaintiffs to monetary compensation.[186]  So those claims still require a determination that the sale was defective, and the court is not persuaded it can construe them as anything but an attack on the sale.  Moreover, nothing in *Bangerter* suggests a collateral attack is permissible so long as the plaintiff seeks monetary damages in lieu of an equitable order.

For the reasons provided, Plaintiffs first through eighth causes of action are an impermissible collateral attack on the sheriff's sale and are thus dismissed.

### C.  Plaintiffs' Oral Motion for Leave to File a Motion for Leave to File Third Amended Complaint is denied.

At the hearing on the pending Motions, the court provided its preliminary view that dismissal was required under *Bangerter* because Plaintiffs had not alleged the sheriff's sale was void.[187]  In response, Plaintiffs argued they alleged the sale was void, but they also requested leave to amend to clarify their position.[188]  The court construed this as an oral Motion for Leave to File a Motion for Leave to File Third Amended Complaint.[189]  Plaintiffs have not since filed a formal Motion for Leave to Amend.  As explained below, the court denies Plaintiffs' oral Motion because it does not comply with the local rules and because any motion for leave to amend would be untimely.

---

[186] *See id.* ¶ 385 ("Shae Financial is liable to CBED for the amount of money exceeding the judgment that would have been received had Shae Financial sold the Kennedy Note in a commercially reasonable manner."); *see also id.* ¶¶ 415–16, 451–53, 459–61, 465.  As previously explained, where the alleged harm is also the later nonjudicial foreclosure of Braffits Mountain, Plaintiffs base that harm on the allegedly unlawful sheriff's sale.  *See, e.g., id.* ¶ 452 (asserting Parkinson "orchestrated and participated in a wrongful civil conspiracy in which Braffits Creek Estates, LLC lost Braffits Mountain to foreclosure to Southwest on the Kennedy Note per a $10 million credit bid—which circumstances never could have or would have happened *but for* Parkinson's unlawful orchestration of the wrongful sale of the Kennedy Note" (emphasis added)).

[187] *Motion Hearing Transcript* at 5–7.

[188] *Id.* at 13, 30.

[189] *Id.* at 37.

Plaintiffs' oral Motion does not comply with the local rules, which require the moving party to provide the proposed amended pleading.[190]  Without the proposed amended pleading, neither Defendants nor the court can evaluate the viability of the proposed amendments, particularly because at the hearing, Plaintiffs were unclear about how they intended to amend. Accordingly, Plaintiffs' oral Motion is denied for failing to comply with the local rules.[191]

But even if Plaintiffs were to file a formal motion, the court would deny it as untimely. When, as here, the permissive period for amendment has passed, whether to allow amendment is within the district court's discretion.[192]  Leave to amend should be freely granted "when justice so requires,"[193] but a court may deny leave to amend for "undue delay."[194]  In the Tenth Circuit, "untimeliness alone [is] a sufficient reason to deny leave to amend, 'especially where the party filing the motion has no adequate explanation for the delay.'"[195]

Plaintiffs here have not provided an adequate explanation for their delay.  Defendants filed their Motion to Dismiss in June 2023, and they squarely presented their argument that dismissal was required under *Bangerter* because Plaintiffs had not alleged the sheriff's sale was

---

[190] DUCivR 15-1(a)(1).  The moving party is also required to provide a redlined version.  *Id.* R. 15-1(a)(2).

[191] The Tenth Circuit has repeatedly upheld denials of requests to amend when the moving party did not file a motion.  *See, e.g., Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("And we have repeatedly held that a bare request to amend in response to a motion to dismiss is insufficient to place the court and the opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." (internal quotation marks and citation omitted)); *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) ("A court may also deny leave to amend . . . where a plaintiff fails to file a written motion and instead 'merely suggests she should be allowed to amend if the court concludes her pleadings are infirm.'" (brackets omitted) (quoting *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010)); *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("[N]ormally a court need not grant leave to amend when a party fails to file a formal motion.").

[192] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

[193] Fed. R. Civ. P. 15(a)(2).

[194] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010).

[195] *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993)).

void.[196]  Plaintiffs did not address this argument, nor did they argue they had alleged the sheriff's sale was void.[197]  They also did not seek leave to amend their Amended Complaint to include allegations that the sheriff's sale was void, although they did seek leave to amend to add a declaratory judgment claim.[198]

Meanwhile, Defendants continued to reference *Bangerter* in later filings.[199]  While Plaintiffs finally addressed *Bangerter* in their *Colorado River* briefing, they still did not seek leave to amend their Amended Complaint to include relevant allegations.  Rather, Plaintiffs waited to seek leave to amend until after the court stated it was inclined to dismiss under *Bangerter*.  This was over five months after Defendants first raised the issue in their Motion to Dismiss and put Plaintiffs on notice of the Amended Complaint's deficiencies.  Plaintiffs did not explain this delay, and the court can see no adequate explanation.  The court thus concludes there was undue delay.[200]

Furthermore, although Plaintiffs were unclear how they would amend their pleading, they did specify that any proposed amended pleading would not incorporate new facts.[201]  Where the movant "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."[202]

---

[196] *See Motion to Dismiss* at 13–15.

[197] *See Opposition to Motion to Dismiss*.

[198] *See Motion for Leave to File Second Amended Complaint*.

[199] *Defendants' Younger Response* at 11; *Defendants' Colorado River Brief* at 10; *Defendants' Colorado River Reply* at 3–4.

[200] *See Leatherwood v. Rios*, 705 F. App'x 735, 740 (10th Cir. 2017) (unpublished) (holding an explanation for delay was "inadequate on its face" when the proposed amended pleading sought to address caselaw raised in the defendants' "motion to dismiss filed five months earlier").

[201] *Motion Hearing Transcript* at 52–53.

[202] *Pallottino*, 31 F.3d at 1027 (quoting *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)).

Because Plaintiffs have not argued new facts justify amendment, the court is disinclined to allow amendment, especially where they have not explained their delay.

Had Plaintiffs opposed *Bangerter*'s applicability or sought leave to amend earlier, the court might have viewed Plaintiffs' request to amend differently.  But Plaintiffs did not respond to Defendants' *Bangerter* argument and did not seek leave to amend until after the court stated it was inclined to dismiss—over five months after Defendants' Motion to Dismiss put them on notice of their Amended Complaint's deficiencies.[203]  For these reasons, Plaintiffs' oral Motion for Leave to File a Motion for Leave to File Third Amended Complaint is denied.

### D.  The declaratory judgment claims are also dismissed.

Plaintiffs seek two declaratory judgments.  First, they seek a declaration "that Shae Financial and Southwest are [] alter egos of Allen and of one another, and declaring that they are liable in full, jointly and severally, to Plaintiffs for all their liabilities to Plaintiffs" (Alter Ego Claim).[204]  Second, they seek a declaration that a lis pendens they filed in March 2023 "is valid, enforceable, proper, and is not a wrongful lien, and does not subject Plaintiffs or their counsel to any liability to Defendants or any third parties" (Lis Pendens Claim).[205]  These requests may be a

---

[203] *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("The court should not have to address repeated 'improvements' to the complaint.  When a party faces a motion to dismiss and believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time."); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998) ("[W]e do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery, especially after the trial judge has already expressed adverse rulings."); *Pallottino*, 31 F.3d at 1027 (concluding district court acted within its discretion by denying leave to amend when the amendment "proposed a theory [the plaintiff] did not choose to advance until after his primary theory had been dismissed"); *id.* ("Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but equal attention should be given to the proposition that there must be an end finally to a particular litigation." (internal quotations and citation omitted)).

[204] *Amended Complaint* ¶ 489; *see also id.* ¶¶ 468–88.

[205] *Id.* ¶ 496; *see also id.* ¶¶ 490–95.  The March 2023 Lis Pendens affected Braffits Mountain and provided notice of the state proceeding.  *See id.* ¶ 333; *see also Opposition to Motion to Dismiss* at 24–25.

collateral attack on the sheriff's sale, but even assuming they are not, the court dismisses them because there are no substantive claims remaining.

When a plaintiff's "substantive claims have failed," its "request for declaratory relief in relation to those claims is not viable."[206]  Because all Plaintiffs' substantive claims have been dismissed as an impermissible collateral attack, their requests for declaratory relief related to those claims are not viable.  But even if they were viable, the court would decline to exercise jurisdiction over them.

Under the Declaratory Judgment Act, federal courts may grant declaratory relief but are not required to.[207]  The Tenth Circuit has articulated five factors district courts should consider when deciding whether to hear a declaratory action: (1) "whether a declaratory action would settle the controversy," (2) "whether it would serve a useful purpose in clarifying the legal relations at issue," (3) "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata,'" (4) "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction," and (5) "whether there is an alternative remedy which is better

---

[206] *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (unpublished); *see also id.* ("The availability of declaratory relief 'presupposes the existence of a judicially remediable right.'" (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960))).  Plaintiffs cited the Utah Declaratory Judgment Act, but requests for declaratory relief in federal court are governed by the federal Declaratory Judgment Act and accompanying caselaw.  *See Farmers All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978).

[207] *See* 28 U.S.C. § 2201(a) (stating scenarios where courts "*may* declare the rights and other legal relations of any interested party" (emphasis added)); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

or more effective."[208]  For the reasons explained below, the court concludes these factors weigh in favor of dismissing both declaratory judgment claims.[209]

Factor 1.  There is a controversy between the parties over whether the underlying loans are enforceable, which is being litigated in state court.  There is also a controversy between the parties concerning the sheriff's sale, which is the basis of Plaintiffs' Amended Complaint in federal court.  Granting Plaintiffs' requested declaratory relief would resolve neither of those controversies.[210]  Rather, the requested declarations would establish only that Shae Financial, Allen, and Southwest are alter egos of one another and that the March 2023 Lis Pendens was not a wrongful lien.[211]  This factor thus weighs in favor of dismissal.

Factor 2.  The requested declarations would clarify some legal relations, but as explained in the Factor 1 analysis, they would not settle all legal relations.  The court is also mindful that because of its dismissal under *Bangerter*, Plaintiffs may seek relief in state court.  While this court is not certain what exactly those proceedings would entail, it is concerned about the potential for piecemeal litigation if it issues declarations touching on claims that might be litigated in state court.[212]  Moreover, the March 2023 Lis Pendens has been released, and

---

[208] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

[209] The parties addressed the factors with respect to the Lis Pendens Claim, but not the Alter Ego Claim.  *Motion to Dismiss* at 29–32; *Opposition to Motion to Dismiss* at 23–25; *Reply in Support of Motion to Dismiss* at 15–16.

[210] Plaintiffs argue the Lis Pendens Claim "would resolve the controversy over the lis pendens."  *Opposition to Motion to Dismiss* at 24.  That argument defines the relevant controversy too narrowly because it ignores the larger disputes concerning the validity of the loans and the sheriff's sale.  *See United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) (explaining "the inquiry into whether the declaratory judgment settles a controversy and clarifies the legal relationships at issue is designed to shed light on the overall question of whether the controversy would be better settled in state court").

[211] *Amended Complaint* ¶¶ 489, 496.

[212] *See City of Las Cruces*, 289 F.3d at 1187 ("The district court acted within its discretion in determining that the United States' claims . . . would be better settled in a unified proceeding.").

Defendants have not asserted a wrongful lis pendens claim.[213]  So the court is not convinced the Lis Pendens Claim would be clarifying "legal relations *at issue*."[214]  For these reasons, this factor weighs in favor of dismissal.

   **Factor 3.**  There is no evidence before the court that the Alter Ego Claim is an attempt at procedural fencing.  Thus, this factor does not weigh in favor dismissing that claim.

   But this factor does weigh in favor of dismissing the Lis Pendens Claim.  Plaintiffs' Amended Complaint alleges Southwest demanded Plaintiffs release the March 2023 Lis Pendens and "threatened Plaintiffs and their lawyers with legal action if they did not."[215]  Accordingly, the court is concerned about Plaintiffs' motives for seeking a declaration in federal court that the March 2023 Lis Pendens was not wrongful and "does not subject Plaintiffs or their counsel to any liability."[216]  So this factor weighs in favor of dismissal for the Lis Pendens Claim.

   **Factors 4 and 5.**  There is not currently a state court case concerning the sheriff's sale, so these factors possibly weigh against dismissal.[217]  But as explained, the court is dismissing Plaintiffs' substantive claims under Utah law requiring a direct attack when the sheriff's sale is voidable.  Accordingly, it is possible Plaintiffs will challenge the sheriff's sale in state court.[218]  Given that possibility, the court is concerned exercising jurisdiction over the Alter Ego and Lis Pendens Claims would be inefficient and would increase friction between this court and the state

---

[213] *See Opposition to Motion to Dismiss* at 25; *Reply in Support of Motion to Dismiss* at 16.

[214] *Mhoon*, 31 F.3d at 983 (emphasis added) (quoting *Allstate Ins. Co.*, 825 F.2d at 1063).

[215] *Amended Complaint* ¶¶ 333, 337.

[216] *See id.* ¶ 496.

[217] Even if they did weigh against dismissal, the court would still decline to exercise jurisdiction because factors 1 and 2 weigh strongly in favor of dismissal.

[218] When deciding whether to exercise jurisdiction over declaratory judgment claims, district courts are not confined to looking "at the state and federal proceedings only as they currently exist."  *City of Las Cruces*, 289 F.3d 1170 at 1188 n.15.

court.  This is especially so because both claims are based on state law.[219]  Furthermore, the

March 2023 Lis Pendens gave notice of the state court proceedings, not this federal suit.[220]  So it

would be more appropriate for the state court to rule on the propriety of the March 2023 Lis

Pendens.  Factors 4 and 5 thus weigh in favor of dismissal.

      In sum, all factors but one weigh in favor of dismissing the Alter Ego Claim, and all

factors weigh in favor of dismissing the Lis Pendens Claim.  So even if Plaintiffs' declaratory

judgment claims were viable, the court would decline to exercise jurisdiction over them.

## IV.    Plaintiffs' Motion for Leave to File Second Amended Complaint is denied.

      After Defendants moved to dismiss, Plaintiffs sought leave to file a Second Amended

Complaint.[221]  The Proposed Second Amended Complaint contains the same causes of action as

before but includes an additional declaratory judgment claim.[222]  In the new claim, Plaintiffs

seek "a declaration by this court that [the] junior and senior security interest in Braffits Mountain

merged once Defendants foreclosed upon the junior interest."[223]  Plaintiffs' theory is that the

Shae Financial Trust Deed extinguished when Southwest purchased Braffits Mountain.[224]  This

theory relies on Plaintiffs' allegation that Allen, Shae Financial, and Southwest are alter egos of

one another.[225]  The court concludes the Proposed Second Amended Complaint is futile and thus

denies Plaintiffs' Motion.

---

[219] *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) ("No error is revealed in the district court's choice to defer to the state court to apply state law and thus refuse jurisdiction.").

[220] *See Amended Complaint* ¶ 333.

[221] ECF 69, *Motion for Leave to File Second Amended Complaint*.

[222] *Id.* at 2; *see also Proposed Second Amended Complaint* ¶¶ 501–12.  The Proposed Second Amended Complaint includes other seemingly minor edits to the Amended Complaint, which are immaterial to the court's analysis.  *See* ECF 69-2, *Redlined Proposed Second Amended Complaint* ¶¶ 1, 8, 9, 12, 32–34, 36, 324, 341, 392, 432, 493.

[223] *Motion for Leave to File Second Amended Complaint* at 2; *Proposed Second Amended Complaint* ¶ 512.

[224] *Proposed Second Amended Complaint* ¶¶ 508–09.

[225] *Id.* ¶¶ 508–11; *see also* ECF 76, *Reply in Support of Motion for Leave to File Second Amended Complaint* at 2.

Courts should "freely give leave [to amend] when justice so requires."[226]  This liberal standard "reflects the basic policy that pleadings should enable a claim to be heard on its merits."[227]  However, courts may deny leave to amend when amendment would be futile.[228] Amendment is futile if the amended complaint would be subject to dismissal.[229]

Plaintiffs' Proposed Second Amended Complaint is futile.  As explained, all Plaintiffs' substantive claims are dismissed because they are impermissible collateral attacks.[230]  The Proposed Second Amended Complaint does not cure the collateral-attack defect.[231] Accordingly, the proposed declaratory judgment claim would not be viable because the substantive claims it relates to have failed.[232]

But even if the proposed claim were viable, the court would decline to exercise jurisdiction over it.  Declaring that the Shae Financial Trust Deed was equitably extinguished when Southwest purchased Braffits Mountain would not settle the controversies between the parties, and even though it may clarify some legal relations, the court is again concerned about the possibility of piecemeal litigation.  Similarly, this state-law issue would be most appropriately and efficiently resolved in a state court proceeding, which Plaintiffs might initiate given the dismissal under *Bangerter*.  For these reasons, the court would decline to exercise jurisdiction over the proposed declaratory judgment claim, and amendment would thus be futile. Plaintiffs' Motion for Leave to File Second Amended Complaint is denied.

---

[226] Fed. R. Civ. P. 15(a)(2).

[227] *Calderon*, 181 F.3d at 1186.

[228] *Foman*, 371 U.S. at 182.

[229] *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[230] *See supra* Section III.

[231] *See Proposed Second Amended Complaint*.

[232] *Long*, 670 F. App'x at 671.

## V.     The April 2023 Lis Pendens must be released.

Southwest moves to compel release of the April 2023 Lis Pendens, which Plaintiffs

recorded to provide notice of this proceeding.[233]  It also seeks attorney fees and costs, as well as

either statutory damages or treble actual damages.[234]  For the reasons explained below, the court

orders the release of the April 2023 Lis Pendens and grants Southwest's request for attorney fees

and costs.  However, it denies Southwest's request for damages.

Utah law permits "[a]ny party to an action filed in the United States District Court for the

District of Utah . . . that affects the title to, or the right of possession of, real property" to "file a

notice of pendency of action."[235]  Any party to the action may then move the court "in which the

action is pending to release the notice."[236]  The lis pendens must be released if "the claimant has

not established by a preponderance of the evidence the validity of the real property claim that is

the subject of the notice."[237]

As explained, all Plaintiffs claims are dismissed.[238]  With no remaining claims, this case

is no longer a pending action "that affects the title to, or the right of possession of, real

property."[239]  Similarly, because Plaintiffs failed to state a claim, they necessarily have not

"established by a preponderance of the evidence the validity of the real property claim" in this

proceeding.[240]  For these reasons, the court orders the release of the April 2023 Lis Pendens.

---

[233] ECF 28, *Motion to Compel Release of Lis Pendens*; *see also* ECF 4, *April 2023 Lis Pendens*.

[234] *Motion to Compel Release of Lis Pendens* at 3–4, 6.

[235] Utah Code § 78B-6-1303(1)(a).

[236] *Id.* § 78B-6-1304(1).

[237] *Id.* § 78B-6-1304(2)(b).

[238] *See supra* Section III.

[239] Utah Code § 78B-6-1303(1)(a); *see also Needham v. Fannie Mae*, No. 2:11-cv-00260-DN, 2012 WL 681781, at *4 (D. Utah Feb. 29, 2012) (ordering release of lis pendens under Utah Code § 78B-6-1303 after all claims "affecting title to or possession of the subject property" were dismissed).

[240] *See* Utah Code § 78B-6-1304(2)(b).

If a party successfully moves to release a lis pendens, the court "shall award costs and attorney fees to [the] prevailing party" unless it finds that the "nonprevailing party acted with substantial justification" or "other circumstances make the imposition of attorney fees and costs unjust."[241]  Southwest requested fees and costs under this authority,[242] and Plaintiffs did not argue they acted with "substantial justification" or that "other circumstances make the imposition of attorney fees and costs unjust."[243]  After carefully reviewing the relevant filings, the court does not find Plaintiffs acted with "substantial justification" or that an award would be "unjust."[244]  The court thus awards Southwest its costs and attorney fees incurred while seeking to compel release of the April 2023 Lis Pendens.

Southwest also seeks $10,000 or treble actual damages.[245]  Under Utah law, "[a] person is liable to the record owner of real property, or to a person with a leasehold interest in the real property that is damaged by the maintenance of a notice of pendency, for $10,000 or for treble actual damages" if the person records a lis pendens "knowing or having reason to know that" the "notice is groundless."[246]  Southwest argues it is entitled to $10,000 or treble actual damages because the April 2023 Lis Pendens was groundless.  The court disagrees because there is no evidence before it showing Southwest suffered harm.  Southwest stated it "has already suffered" damage, but it did not explain what damage it suffered.[247]  It also argued damage would occur if

---

[241] *Id.* § 78B-6-1304(8).

[242] *Motion to Compel Release of Lis Pendens* at 6.

[243] *See Opposition to Motion to Compel Release of Lis Pendens*.

[244] *See* Utah Code § 78B-6-1304(8).

[245] *Motion to Compel Release of Lis Pendens* at 3–6.

[246] Utah Code § 78B-6-1304.5.

[247] *Motion to Compel Release of Lis Pendens* at 5.

a sale of Braffits Mountain scheduled for August 30, 2023, did not close.[248]   However, it appears

that sale occurred.[249]   For these reasons, the court cannot conclude Southwest was damaged by

the April 2023 Lis Pendens, and it declines to grant Southwest $10,000 or treble actual damages.

## CONCLUSION

For the reasons provided above, Defendants' Motion to Dismiss[250] is GRANTED and all

Plaintiffs' claims are dismissed.  Defendants' alternative Motion to Strike[251] is DENIED as

moot.  Plaintiffs' Motion for Leave to File Second Amended Complaint[252] and oral Motion for

Leave to File a Motion for Leave to File Third Amended Complaint are DENIED.

Southwest's Motion to Compel Release of Lis Pendens[253] is GRANTED in part and

DENIED in part.  The court orders the release of the April 24, 2023 Lis Pendens,[254] and

Southwest is entitled to its attorney fees and costs related to its Motion to Compel Release of Lis

Pendens.[255]   But Southwest is not entitled to $10,000 or treble actual damages.[256]

The Clerk of Court is directed to close the case.

SO ORDERED this 11th of December 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[248] *Id.* at 5–6.

[249] ECF 71, *Opposition to Motion for Leave to File Second Amended Complaint* at 6 n.6 (stating a third-party purchased Braffits Mountain); *see also Motion to Intervene*.

[250] ECF 27.

[251] *See id.* at 33–35.

[252] ECF 69.

[253] ECF 28.

[254] *See* ECF 4.

[255] *See* Utah Code § 78B-6-1304(8).

[256] *See id.* § 78B-6-1304.5.